UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CLEMENT PASQUARIELLO,<br>Plaintiff, | § §<br>§ |
| v. | § Case # 1:18-cv-681-DB |
| COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | §<br>§ MEMORANDUM DECISION<br>§ AND ORDER<br>§ |

## INTRODUCTION

Plaintiff James Clement Pasquariello ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 11. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED**, and the Commissioner's motion (ECF No. 11) is **GRANTED**.

## BACKGROUND

On August 1, 2014, Plaintiff filed his DIB application,[1] alleging a disability beginning on March 31, 2012 (the disability onset date), due to back injury. Transcript ("Tr.") 217. Plaintiff's claim was initially denied on January 27, 2015 (Tr. 125-29), after which he requested an

---

[1] Plaintiff also filed an application for supplemental security income ("SSI") under Title XVI). Tr. 182. The Social Security Administration granted Plaintiff's Title XVI application (Tr. 98-107) but denied his Title II application (Tr. 113-122).

administrative hearing (132-33). Plaintiff's hearing was held on July 17, 2017. Administrative Law Judge Lynette Gohr (the "ALJ") presided over the hearing via video from Buffalo, New York. Tr. 53, 55. Plaintiff appeared and testified from Jamestown, New York, and was represented by Galena Duba-Weaver, an attorney. *Id*. Rachel Duchon, an impartial vocational expert ("VE") also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on September 27, 2017, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. Tr. 38-45. On April 17, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-4. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her September 27, 2017 decision:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2012;

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 31, 2012 through his date last insured of March 31, 2012 (20 CFR 404.1571 *et seq.*);

3. Through the date last insured, the claimant had the following severe impairments: lumbar degenerative disc disease with radiculopathy and cervical degenerative disc disease (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform light work[2] as defined in 20 CFR 404.1567(b) with the following additional limitations: he could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to unprotected heights and dangerous machinery as well;

6. Through the date last insured, the claimant was capable of performing past relevant work as an account manager (DOT 279.357-054) and a telemarketer (DOT 299.357-014). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565);

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 31, 2012, the alleged onset date, through March 31, 2012, the date last insured (20 CFR 404.1520(g)).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

Tr. at 35-50.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on August 1, 2014, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2012, the last date insured. *Id*. at 45.

## **ANALYSIS**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ relied on a single medical opinion from a state agency physician and failed to develop the record by ordering another medical opinion. *See* ECF No. 9-1 at 1. In response, the Commissioner argues that the ALJ properly evaluated the evidence of record as a whole, including Plaintiff's work history, activities of daily living, conservative course of treatment, and his own statements about his symptoms, as well as the clinical observations and findings. *See* ECF No. 11-1 at 10. The Commissioner also points out that in this case Plaintiff's insured status was only one day—March 31, 2012—which is the alleged onset date of disability and also the date Plaintiff's insured status expired. Tr. 38, 41-44.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

On January 22, 2015, K. Beig, M.D. ("Dr. Beig"), a physician with the State agency, reviewed the record and completed a physical functional assessment of Plaintiff. Tr. 115-17. Dr. Beig opined that Plaintiff was able to lift and carry 50 pounds occasionally and 25 pounds

5

frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in a workday; and, thus, retained the ability to perform the exertional requirements of medium work. *Id*. Dr. Beig further opined that Plaintiff could frequently perform all postural maneuvers, but could only occasionally climb ladders, ropes, or scaffolds and stoop. Tr. 116. Plaintiff complains that the ALJ relied solely on Dr. Beig's opinion and failed to develop the record by ordering another medical opinion. *See* ECF No. 9-1 at 1. The Commissioner argues that, contrary to Plaintiff's assertion, the ALJ did not solely rely on the opinion of Dr. Beig, and the ALJ was not required to further develop the record. *See* ECF No. 11-1 at 11. Further, the Commissioner argues, the ALJ correctly concluded that although Plaintiff suffered from the severe physical impairments of lumbar degenerative disc disease with radiculopathy and cervical degenerative disc disease, these impairments did not preclude Plaintiff from performing his past relevant work or other work on March 31, 2012. *Id*. (citing Tr. 40, 44).

As noted, o

ne of Plaintiff's main contentions is that the ALJ improperly relied solely on the medical opinion of Dr. Beig, which did not constitute substantial evidence because it relied entirely on evidence from after Plaintiff's date last insured. *See* ECF No. 9-1 at 1, 10-14. However, contrary to Plaintiff's assertion, and as discussed further below, the ALJ did not rely solely on Dr. Beig's opinion but rather, on the evidence of record as a whole, including evidence of Plaintiff's work history, activities of daily living, conservative course of treatment, his own statements about his symptoms, and the clinical observations and findings. Notably, Dr. Beig found Plaintiff could perform medium work, but the ALJ found Plaintiff able to perform only light work. Tr. 43, 115-16. The ALJ appropriately gave great weight to Dr. Beig's opinion because it was consistent with all of the other evidence from before and after the relevant date of March 31, 2012. Tr. 43, 115-

17; *see Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). In this case, the ALJ's assessment of Dr. Beig's report is well supported by the record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion.").

The evidence shows that, despite suffering from a back injury in 1990, Plaintiff successfully performed at various jobs, including one job as a driver in 2012. Tr. 58-60, 218, 224, 467. From 1990 to 2012, Plaintiff held jobs requiring various levels of both mental and physical capacity, including bellhop, account manager, customer service representative, salesman, and business owner. Tr. 82-83, 218, 224, 721, 728, 751. Plaintiff never indicated that he left these jobs due to health conditions, but rather due to other causes, such as increased job expectations (Tr. 59), inability to get along with others (Tr. 749), or because the job was "too far" (Tr. 761). During his hearing, Plaintiff testified that he had a job driving a friend back and forth to dialysis appointments from April of 2012 through June of 2012, which is right after the relevant date of March 31, 2012. Tr. 58-60. Therefore, the evidence of Plaintiff's work history shows that he was not as disabled by his back impairments as he claimed to be. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (finding that although it is true that "a good work history may be deemed probative of credibility . . . it bears emphasizing that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony.").

Plaintiff's daily activities also do not support his claim of physical impairments that would prevent him from performing past relevant work. Plaintiff testified that between January and April of 2012, he was able to prepare food, do the laundry, dishes, grocery shopping, and some

vacuuming. Tr. 65-66. He sometimes went swimming and played pool with his brother. Tr. 68. Since he moved back to New York in 2012, Plaintiff testified that he regularly flew back and forth to California and did not require any special services at the airport. Tr. 62, 467. He was also the primary caregiver for his aging mother. Tr. 341. The ALJ properly considered these activities of daily living in determining that Plaintiff retained the functional capacity to perform light work. *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ may rely on such activities to show that a claimant's allegation that she was disabled was not credible); *see also Gaathje v. Colvin*, No. 3:15-CV-1049, 2016 WL 11262524, at *9 (D. Conn. July 11, 2016), report and recommendation adopted, No. 3:15-CV-01049, 2017 WL 658055 (D. Conn. Feb. 17, 2017) ( "The ALJ does not equate plaintiff's activities of daily living with her ability to work. Rather, he permissibly considered plaintiff's activities of daily living as but one of many factors in determining both plaintiff's credibility and RFC.").

Furthermore, Plaintiff's conservative course of treatment and his own statements about his medical care show that his severe impairments were not disabling. The medical evidence before and after the relevant date of March 31, 2012 shows that Plaintiff's symptoms were consistently managed with conservative treatment such as medication, trigger point injections, epidural steroid injections, chiropractic care, acupuncture, home exercise, and physical therapy. Tr. 349-53, 358, 362, 405, 416, 603, 652, 653, 712, 714, 722, 751, 1206. During a neurosurgery consultation on August 29, 2005, David Carter, M.D. ("Dr. Carter"), noted that Plaintiff suffered from degenerative disc disease from L3-S1 and no significant neural compression. Tr. 750. Dr. Carter did not recommend major surgical intervention, but instead recommended "maximum nonoperative program." Tr. 750. After a follow-up MRI scan in 2014, the treating physician again recommended conservative forms of treatment and active rehabilitation to improve function. Tr.

538. Plaintiff seemed satisfied with a conservative course of treatment, reporting "excellent results" with ongoing chiropractic care and relief of his pain with medication. Tr. 340, 711, 724. Thus, the ALJ properly considered Plaintiff's conservative treatment—and his apparent satisfaction with this treatment—as one factor in determining Plaintiff's RFC. Tr. 42. "[T]he ALJ [is] entitled to consider evidence that plaintiff pursued a conservative treatment as one factor in determining credibility." *Rivera v. Colvin*, No. 1:14-CV-00816 MAT, 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)).

Finally, the clinical observations and findings show that Plaintiff's severe impairments were not disabling. In the medical record prior to the relevant date of March 31, 2012, medical providers routinely described Plaintiff as a well-developed, well-nourished male in no acute distress. Tr. 712. He always was able to walk well. Tr. 344, 361, 412, 448, 751. During a functional capacity examination on December 14, 2012, which was several months after the date at issue, the physical therapist noted that Plaintiff suffered from "no significant limitations in range of motion, strength, or balance," Tr. 681. In the medical records following the relevant date of March 31, 2012, medical providers routinely noted that Plaintiff ambulated independently with steady gait and did not need any assistive devices. Tr. 337, 361, 412, 610. He was alert and fully oriented and attended to his own activities of daily living. Tr. 337, 361, 412, 425, 610. He displayed normal mood and affect and was described as well-nourished, well-developed, pleasant, communicative, and in no acute distress. Tr. 338, 361, 412, 425, 611. The ALJ noted and properly considered all these clinical findings in determining Plaintiff's RFC. Tr. 42; *see Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (finding that a claimant's testimony as to subjective complaints is entitled to great weight only when consistent with and supported by objective medical evidence).

For the one day of consideration at issue here, Plaintiff's counsel does not allege that Plaintiff's condition was significantly changed from prior to the onset date and after the onset date. At the hearing, Plaintiff's counsel represented that exhibits and diagnostic studies from 2004 to the date last insured demonstrated Plaintiff's severe back impairments. Tr. 57. However, a lumbar MRI in 2004 noted no impingement on existing nerve roots at any level. Tr. 307. An EMG in 2005 noted findings consistent with L5 radiculopathy, but the report also notes no radiculopathy, numbness or paraesthesia in lower extremities, no tenderness, negative SLR bilaterally, and muscle strength 5/5 all groups. Tr. 309-10. A 2014 treatment note from the VA contains a diagnosis of lumbosacral spondylosis without myelopathy. Tr. 389. The same diagnosis is contained in the 2012 VA treatment notes. Tr. 332. A lumbar MRI in September 2014 notes degenerative changes, but essentially the findings are noted as "unchanged from *previous studies*." Tr. 347 (emphasis added). Treatment records also stated that Plaintiff's "pain is more muscular in nature now" (*id*.) and noted that Plaintiff reported "pain control is at acceptable levels for patient's comfort" (Tr. 340). Records from a lumbar MRI in 2011 indicate moderate lower lumbar degenerative changes. Tr. 823. X-rays in 2010 note degenerative facet arthropathy and degenerative disc disease. Tr. 827.

A treatment record from the VA facility in California noted that although there is a history of back pain, the patient appears to be in no pain and no antalgic gait is noticed. Tr. 830-831. The note also stated: "Veteran walking fast in Exam room with all quick movements." Tr. 830. Mild muscle tenderness/spasm, negative SLR, and normal motor strength and sensation were also noted. Tr. 830-831. The consultative examiner reviewed at least two MRIs, one from 2012 and the second from 2014. Tr. 112. Thus, even if the consulting examiner did not have records prior to the onset date, later records indicate there was no significant change in Plaintiff's condition.

Plaintiff also contends remand is warranted for the ALJ to develop the record by ordering a medical opinion because the ALJ "did not have a proper medical opinion and her duty to develop the record was triggered." ECF No. 9-1 at 1. Although the ALJ has an affirmative duty to develop the record (*see* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.912(d)(2)), "[t]he ALJ does not need to attempt to obtain every extant record of the claimant's doctor visits when the information on the record is otherwise sufficient to make a determination, and need not request more detailed information from the treating physician if the physician's report is a sufficient basis on which to conclude that the claimant is not disabled." *Harvey v. Astrue*, No. 5:05-CV-1094 NAM, 2008 WL 4517809, at *15 (N.D.N.Y. Sept. 29, 2008) (citing *Rosa*, 168 F.3d at 79).

As this district court has observed, "[t]he ALJ's duty to develop the record is not infinite, and when, as here, evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary." *Tatelman v. Colvin*, 296 F. Supp. 3d 608, 612 (W.D.N.Y. 2017) (internal quotation omitted); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (refusing to remand "solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity"). As discussed above, there was sufficient evidence in the record for the ALJ to decide whether or not Plaintiff was disabled, including evidence of Plaintiff's work history, activities of daily living, conservative course of treatment, his own statements about his symptoms, and the clinical observations and findings. Thus, the evidence presented reasonably supports the ALJ's RFC finding, which should be upheld regardless of whether a court, having heard the same evidence *de novo*, might have come to a different conclusion. *See, e.g.*, *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980); *Schacht v. Barnhart*, No. CIV.3:02 CV 1483 DJS, 2004 WL 2915310, at *7 (D. Conn. Dec. 17, 2004).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE